**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**MARK REDDIN**                                            **CASE NO.  2:23-CV-01292**

**VERSUS**                                                        **JUDGE JAMES D. CAIN, JR.**

**CARLOS DEL TORO, in his capacity as**         **MAGISTRATE JUDGE LEBLANC**
**Secretary of the Navy**

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment (Doc. 14) filed by Plaintiff, Mark Reddin, and a "Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Incorporated Cross-Motion for Summary Judgment" (Doc. 17) filed by Carlos Del Toro, Secretary of the Navy (hereinafter referred to as the "Navy"). Both parties assert that there are no material facts in dispute, and each argue that they are entitled to judgment as a matter of law.

## BACKGROUND

Plaintiff, Mark Reddin served in the United States Navy between July 2001 and April 2002.[1] In November 2001, Reddin suffered a back injury picking up a heavy person during boot camp, and later reported a back strain on March 29, 2002.[2] On January 7, 2002, while assigned to Electronic Attack Squadron 130,[3] Reddin was charged with two specifications of absence without leave; insubordinate conduct toward a petty officer;

---

[1] Complaint, ¶ 1, Doc. 1 AR10-13;21-23.
[2] AR200-202.
[3] AR80.

disobeying a general order; being drunk on duty; and drunk and disorderly conduct of a nature to bring discredit upon the armed forces for events that occurred the previous day.[4]

Consequently, on January 22, 2002, Redding received non-judicial punishment ("NJP") for his misconduct, resulting in a reduction of his paygrade, a forfeit of one-half month's pay for two months (suspended six months), and he was placed in a correctional custody for a period of 30 days.[5] Consequently, Reddin was re-assigned to Correctional Custody Unit ("CCU") Puget Sound from January 24, 2002, through February 22, 2002. During his stay at Puget Sound, Reddin underwent "intense motivational training, through a routine of individual and group counseling, daily physical training, and thorough life-skills programs."[6] At the conclusion of this period, the officer in charge wrote that Reddin "completed the program in a less than satisfactory manner and was pending a disciplinary review at the time of his departure," further noting that Reddin "has poor decision making skills and could quite possibly be subject to further disciplinary actions later in his enlistment."[7]

Following his 30-day correctional custody, on March 25, 2002, Redding tested positive for marijuana.[8] On March 29, 2002, Reddin was charged with two specifications of disobeying lawful general order and wrongful use of marijuana.[9] This misconduct

---

[4] AR AT36-38.
[5] AR24, 37, 61, 82, Doc. 13.
[6] AR33.
[7] *Id.*
[8] *Id.*
[9] AR24-28m 30, 63-64.

resulted in another NJP and reduction in pay as well as a notification of administrative separation from the Navy due to Reddin's drug abuse and pattern of misconduct.[10]

On April 15, 2002, Reddin was discharged from the Navy with an Other Than Honorable ("OTH") characterization of service.[11] Reddin declined to file a claim with the Veteran's Administration ("VA") at the time of his discharge.[12]

In 2019, Reddin sought health care benefits from the VA.[13] Redding claims that his drug and alcohol misconduct was due to self-medicating with drugs and alcohol for his back injury sustained during service.[14] The VA denied him benefits noting that a "discharge under other than honorable conditions issued because of willful and persistent misconduct acts as a bar to veterans' benefits," citing 38 C.F.R. § 3.12(d)(4).[15]

In 2020, Reddin petitioned the Board for Correction of Naval Records ("BCNR" and sometimes referred to as the "Board") to request a discharge characterization upgrade to Honorable in order to be eligible for VA benefits.[16] The BCNR denied relief on January 4, 2021, finding that the record did not show probable material error or injustice.[17] Under the liberal consideration standards, the BCNR concluded that there was "no convincing evidence that [he] suffered from any type of diagnosed mental health condition while on

---

[10] AR26-27.
[11] AR21-23. When servicemembers are administratively discharged from the Navy, they are assigned one of three "characterizations of service," which are, from highest to lowest, (1) Honorable, (2) General (Under Honorable Conditions), and (3) Other than Honorable ("OTH"). OTH discharge is awarded when the servicemember's conduct involved one or more acts or omissions constituting a significant departure from the conduct expected of members of the Naval Service.
[12] AR58.
[13] AR100-102.
[14] AR101.
[15] AR102.
[16] AR94-96.
[17] AR88.

active duty, or that any such mental health condition was related to or mitigated the misconduct that formed the bases of [his] discharge."[18] Specifically, the BCNR considered and acknowledged Reddin's positive contributions to the Navy, the length of his active-duty service to the Nation, and his post-discharge achievements,[19] finding that Reddin's OTH discharge characterization was issued without error or injustice. BCNR concluded that corrective action was not warranted.[20]

In September 2021, Reddin sought reconsideration of the BCNR's decision, and again requested that his discharge characterization be upgraded.[21] Reddin submitted what he considers new evidence he obtained in July 2021, specifically, an evaluation from Dr. Brett Valette, a licensed clinical psychologist.[22] Dr. Valette opined that Reddin's in-service back injury resulted in an undiagnosed Somatic Symptom Disorder and that he used marijuana to self-medicate his pain.[23] In response, BCNR requested a mental health advisory opinion.[24]

The licensed clinical psychologist issued an advisory opinion and concluded that there was no evidence in Reddin's limited-service record to show that he was evaluated by a mental health provider in service, noting that Reddin's reconsideration was based on post-service evidence that he incurred a mental health condition in service.

---

[18] AR89.
[19] AR90.
[20] *Id.*
[21] AR173-78.
[22] AR187-98.
[23] *Id.*
[24] AR172.

The advisory opinion also noted that Reddin's post-service provider had indicated that Reddin's mental health condition should be considered a mitigating factor in his marijuana use, and that Reddin contended that his alcohol use was an attempt to medicate his symptoms.[25]

The advisory opinion noted that, based on the evidence available, "there is some evidence [Reddin] may have incurred a mental health condition during military service, and there is some evidence that his misconduct could be mitigated by a mental health condition." *Id.*

## **STANDARD**

The administrative separation of Navy servicemembers is governed by the Navy's Military Personnel Manual ("MILPERSMAN").[26] As set forth in Section 1910-010:

> a. Enlisting in the Navy involves commitment to the United States, the Service, and one's fellow citizens and Service members in order to complete a successful period of obligated service (OBLISERV). Early separation for failure to meet these required standards of performance or discipline represents a failure to fulfill that commitment. When persons enter the Service, the Navy invests substantial resources in their training, equipment, and related expenses. Separation prior to completion of OBLISERV represents a loss of this investment and requires increased accessions.

> b. Under these circumstances, it is often in the best interests of the Navy to take administrative action. Retaining individuals who do not conform to naval standards of conduct, discipline, and performance creates waste in terms of pay and administrative efforts, degradation of trust and confidence, and substandard mission performance. These situations represent an inefficient use of limited defense resources; therefore, every reasonable effort must be made to:

---

[25] *Id.*
[26] https://www.mynavyhr.navy.mil/References/MILPERSMAN/.

(1) Identify, in a timely manner, Service members whose behavior is symptomatic of character flaws that do not meet our high standards, and who exhibit a likelihood for early separation; and (a) Either improve their chances of retention through counseling, retraining, and rehabilitation; or (b) Separate promptly, those Service members who do not demonstrate potential for further service.

(2) Recoup, pro rata, money expended for paid bonuses and or education and training funds paid to a Service member in return for extending a service obligation, when that service is administratively terminated prior to successful completion.

MILPERSMAN 1910-010, § 2. The MILPERSMAN further sets forth the various grounds on which servicemembers may be processed for administrative separation, some of which are mandatory, meaning that such grounds "are so detrimental to good order and discipline, mission readiness, and appropriate standards of performance and conduct, that processing for [administrative separation] is mandatory"—i.e., the member's command is required to initiate the separation process.6 *See* MILPERSMAN 1910-100 ("Reasons for Separation") and 1910-233 ("Mandatory Separation Processing"). Relevant to this case, processing is mandatory for misconduct as a result of drug use. MILPERSMAN 1910-146 and 1910-233.

A servicemember's rights and benefits are affected by the characterization assigned. An OTH discharge can result from "[c]onduct involving one or more acts [or] omissions that constitute a significant departure from the conduct expected of members of Naval Service. Examples . . . include the use of force or violence to produce serious bodily injury or death, abuse of special position of trust, disregard by a superior of customary superior-subordinate relationships, acts or omissions that endanger the security of the United States [ ] or the health and welfare of other servicemembers of the military service, those

punishable by punitive discharges, extended unauthorized absence [ ], drug abuse and drug distribution (trafficking)." *Id*. Generally, an OTH can only be awarded by an administrative separation board, unless the member waives his or her rights to the board. MILPERSMAN 1910-304.

The Secretary of the Navy has established the BCNR; the BCNR's rules are codified at 32 C.F.R. Part 723. When BCNR identifies a material error or injustice, it may—when authorized—take final action to correct the record. 32 C.F.R. § 723.2(b) & 723.6(e). When not authorized to take final corrective action itself, BCNR may make appropriate recommendations to the Secretary for the correction of records. *Id*. § 723.6. BCNR examines applications and reviews "all pertinent evidence of record," but it may deny a petition when the "record fails to demonstrate the existence of probable material error or injustice." *Id*. § 723.6(e)(1)—(e)(2). The "Board relies on a presumption of regularity to support the official actions of public officers." *Id*. § 723.3(e)(2). A petitioner bears the burden of proving with substantial evidence that the acting officials committed an error or fashioned an injustice. *Id*. In the absence of substantial evidence to the contrary, BCNR will presume military officers "properly discharged their official duties." *Id*.

BCNR may accept petitions for reconsideration following an otherwise final decision. *Id*. § 723.9. However, an applicant must present new and material evidence and may not simply raise matters the BCNR previously addressed. *Id*. New evidence is "evidence not previously considered by the BCNR and not reasonably available to the applicant at the time of the previous application." *Id*. Likewise, evidence is only "material if it is likely to have a substantial effect on the outcome." *Id*. When the BCNR denies an

applicant's original request in executive session, including a request for reconsideration, it shall do so in writing. *Id*. § 723.3(e). The BCNR must compose a brief statement, which "shall include the reasons for the determination." *Id*.

With respect specifically to servicemembers' requests to modify their discharge, the BCNR is bound by certain Secretary-level guidance pertaining to mental health conditions. On September 3, 2014, then-Secretary of Defense Charles Hagel issued a memorandum entitled "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder." (Hagel memo).[27] In the memo, Secretary Hagel acknowledged the desire to address petitions filed by Vietnam veterans to the various military corrections boards seeking to "upgrad[e] their discharges based upon previously unrecognized claims of [PTSD]." *Id.* The memo further noted the difficulties that veterans faced in documenting "conditions that form a basis for mitigation in punitive, administrative, or other legal actions" to establish a "nexus" between PTSD and the "misconduct underlying the Service member's discharge with a characterization of service under other than honorable conditions." *Id.* Characterization of service is a term of art that appears on military discharge paperwork, and, as far as administrative discharges go, may be "other than honorable," "general (under honorable conditions)," or "honorable," depending on the circumstances. *Id.*; *Wisotsky v. United States*, 69 Fed. Cl. 299, 310–11 (2006).

---

[27] Doc. 14-2.

Pursuant to this guidance, military record correction boards are required to give liberal consideration to petitions in which the veteran asserts that PTSD or PTSD-related conditions "might have mitigated the misconduct that caused the other than honorable conditions characterization of service." *Id.*; *see Akins v. Esper*, No. 4:19-CV-00420-BRW, 2020 U.S. Dist. LEXIS 155609, at *4 n.20 (E.D. Ark. Aug. 27, 2020) ("The new guidance expanded the ability of veterans with previously unrecognized cases of PTSD to seek discharge upgrades," and it "mandated 'liberal consideration' to a finding that PTSD existed at the time of service.") The Hagel memo also directs the military correction boards to consider such petitions and liberally waive any time limits that may have prevented their review. *Id.*

On August 25, 2017, then-Undersecretary of Defense, Anthony Kurta, issued a memo that clarified and expanded upon the Hagel memo (Kurta memo).[28] The Kurta memo expanded the Hagel memo to veterans' mental health, including PTSD and Traumatic Brain Injury, as well as experiences of sexual assault and harassment as potential mitigation for misconduct. *Id.*; *see Akins*, 2020 U.S. Dist. LEXIS 155609 at *4 n.20 (The memo "added traumatic brain injury, general mental health conditions, sexual assault, and sexual harassment as conditions to be considered in the discharge review," and it "provides a general framework for deciding whether a condition qualifies as a mitigating condition for review purposes.") Paragraph 19 of the memo, addressing whether the condition or experience outweighs the discharge, provides that "[p]remeditated misconduct is not

---

[28] Doc. 14-2.

generally excused by mental health conditions. . . . However, substance seeking behavior and efforts to self-medicate symptoms of a mental health condition may warrant consideration. Review Boards will exercise caution in assessing the causal relationship between asserted conditions or experiences and premeditated misconduct." *Id.* Additionally, paragraph 26.l. of the memo's "Additional Clarifications" provides that "[l]iberal consideration does not mandate an upgrade. Relief may be appropriate, however, for minor misconduct commonly associated with mental health conditions . . . and some significant misconduct sufficiently justified or outweighed by the facts and circumstances." *Id.*

Later, in July 2018, then-Undersecretary of Defense Robert Wilkie issued a third policy memorandum addressing liberal consideration (Wilkie memo).[29] Although the memo focuses on relief granted to ameliorate a criminal sentence, it also provides additional guidance to other requests for corrections, "including changes in a discharge which may be warranted on equity or relief from injustice grounds." *Id.* The memo provides that "[c]hanges in policy, whereby a Service member under the same circumstances today would reasonably be expected to receive a more favorable outcome than the applicant received may be grounds for relief." *Id.* Yet, the memo is also clear that nothing therein "mandate[s] relief." *Id.* It also provides that "[c]hanges to the narrative reason for a discharge and/or an upgraded character of discharge granted solely on equity, injustice or clemency grounds normally should not result in separation pay. . ., the payment

---

[29] Doc. 14-2.

of past medical expenses, or similar benefits that might have been received if the original discharge had been for the revised reason or had the upgraded character." *Id.*

Summary judgment is the appropriate mechanism for reviewing the final action of a government agency under the APA. *Clark v. Dep't of the Army*, No. 17-7757, 2019 U.S. Dist. LEXIS 29342, at *6 (E.D. La. Feb. 25, 2019) (citing *Spiller v. Walker*, 2002 U.S. Dist. LEXIS 13194 *1, *21 (W.D. Tex. 2002) ("In a case like this one, where the Court is reviewing an agency decision under the APA, summary judgment is the appropriate means for resolving claims because the Court is reviewing the legality of the agency action, not acting as the initial factfinder."); *see also Am. Stewards of Liberty v. DOI*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019) ("In the context of a challenge to an agency action under the Administrative Procedure Act [ ], '[s]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review'" (quoting *Blue Ocean Inst. v. Gutierrez*, 585 F. Supp. 2d 36, 41 (D.D.C. 2008)). "Thus, in evaluating a case on summary judgment, the court applies the standard of review from the APA." *Id.* (citing *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 627 (5th Cir. 2001); *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998)); *see also Davis Mts. Trans-Pecos Heritage Ass'n v. United States Air Force*, 249 F. Supp. 2d 763, 773 (N.D. Tex. 2003) ("The standard for summary judgment on judicial review of agency decisions is not whether there is a genuine issue of material fact but 'whether the agency action was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole.'")

"Under the APA, a court may only set aside an agency action in limited circumstances, including, as alleged here, 'if it is arbitrary [and] capricious . . . or otherwise not in accordance with law.'" *Pegasus Equine Guardian Ass'n v. United States Army*, No. 2:17-cv-0980, 2019 U.S. Dist. LEXIS 52539, at *19 (W.D. La. Mar. 27, 2019) (quoting *Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 580 (5th Cir. 2016) and 5 U.S.C. § 706(2)). "The court presumes that the agency's decision is valid and so the burden is on the party challenging the agency action to demonstrate that such action should be invalidated." *Pegasus,* U.S. Dist. LEXIS 52539, at *19 (citing *Buffalo Marine Svcs., Inc. v. United States*, 663 F.3d 750, 753 (5th Cir. 2011)). Thus, "'[t]he court's role is not to weigh the evidence pro and con but to determine if the agency action was based on a consideration of the relevant factors and whether there was a clear error of judgment.'" *Id*. (quoting *Delta Found. v. United States*, 303 F.3d 551, 563 (5th Cir. 2002) (internal quotations omitted)). In this regard, "[t]he challenged agency decision 'need not be ideal, so long as it is not arbitrary and capricious, and so long as the agency gave at least minimal consideration to relevant facts contained in the record.'" *Id*. (quoting *Harris v. United States*, 19 F.3d 1090, 1096 (5th Cir. 1994) (internal quotations omitted)).

"In reviewing agency action under the APA, 'the court shall review the whole record or those parts of it cited by a party.'" *OnPath Fed. Credit Union v. United States Dep't of Treasury*, No. 20-1367, 2021 U.S. Dist. LEXIS 232642, at *5 (E.D. La. Dec. 6, 2021) (quoting 5 U.S.C. § 706). "The 'focal point for judicial review should be the administrative record already in existence,  not some new record made initially in the reviewing court.'" *Id*. (quoting *Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1408 (5th Cir. 1987)).

"Often called the 'record rule,' this principle limits the Court's review 'to the record in existence at the time the agency made its decision.'" *Id.* (quoting *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 444 (5th Cir. 2001)).

An agency action is arbitrary or capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *La. Env't Action Network v. E.P.A.*, 382 F.3d 575, 582 (5th Cir. 2004) (quoting *Tex. Oil & Gas Ass'n v. E.P.A.*, 161 F.3d 923, 934 (5th Cir. 1998)).

"Final decisions made by boards for the correction of military records . . . are subject to judicial review under the APA and can be set aside if they are arbitrary, capricious, or not supported by substantial evidence." *Williams v. Wynne,* 533 F.3d 360, 368 (5th Cir. 2008). Notably, "the review of military board judgments is 'exceptionally deferential.'" *Williams,* 533 F.3d at 368 (quoting *Viles v. Ball,* 872 F.2d 491, 495, 277 U.S. App. D.C. 56 (D.C. Cir. 1989)); *see also Kreis v. Sec'y of the Air Force,* 866 F.2d 1508, 1514 (D.C. Cir. 1989) (holding that § 1552(a)(1) "substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination"). Thus, "[a]ll that is required is that the Board's decision minimally contain a rational connection between the facts found and the choice made." *Williams*, 533 F.3d at 368 (quoting *Frizelle v. Slater,* 111 F.3d 172, 176-77 (D.C. Cir. 1997)). The plaintiff "bears the burden of establishing by 'cogent and clearly convincing evidence' that the decision of the board was the result of a material legal error or injustice." *Id.*

## LAW AND ANALYSIS

Reddin is seeking review of BCNR's decision under the Administrative Procedure Act, 5 U.S.C. § 702 ("APA") that Reddin's conduct was not due to mental health-related conditions or symptoms. Reddin suggests that BCNR ignored the opinion of his psychologist and the advisory opinion obtained by BCNR and argues that the Board's opinion was arbitrary, capricious, and in violation of law. Reddin asks the Court to reverse BCNR's decision to deny his request to upgrade his discharge from OTH to honorable.

*10 U.S.C. § 1553 and Mankin*

Reddin relies on 10 U.S.C. § 1553d(1)(A) and (B), which adds additional requirements for veterans who presented evidence that they suffered PTSD, TBI, or other trauma. Under Subsection d(1)(A) and (B), when a veteran submits evidence that a veteran has been diagnosed with PTSD or TBI or a similar condition and alleged that this condition contributed to his misconduct, the military shall have as one member of its board, a clinical psychologist or a physician who has training on mental health issues.  Under § d(3)(A), the statute also requires that the Board review medical evidence of the Secretary of Veteran Affairs or a civilian health provider that is presented by the former member.  This section also requires that the case be reviewed with liberal consideration to the former member that PTSD or TBI or any other mental health condition potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the member's discharge or dismissal.

Plaintiff also relies on the *Manker v. Del Toro,* (Civil Action 3:18-cv-372), 329 F.R.D. 110 (D.C. Conn. Nov. 15, 2018) wherein plaintiff alleged that the Navy was not

applying the proper standard of liberal consideration issued under policy guidance and the Fairness for Veterans Act of 2016 ("FVA"). In *Manker,* a class action settlement was approved on February 15, 2022.

Additionally, Reddin relies on the Kurta Memo that required four (4) questions to be addressed: (1) did the veteran have a condition or experience that may excuse or mitigate the discharge?; (2) did that condition exist or experience occur during military service?; (3) does that condition or experience actually excuse or mitigate the discharge?; (4) does that condition or experience outweigh the discharge? Kurta Memo's guidance states that liberal consideration is to be given to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters related to mental health conditions, including PTSD, TBI, or sexual assault or sexual harassment.

On the four particular questions, the guidance states that, absent clear evidence to the contrary, a diagnosis rendered by a licensed psychiatrist or psychologist is evidence that the veteran had a condition that may excuse or mitigate the discharge. The guidance also states that a diagnosis made by a licensed psychiatrist or psychologist that the condition existed during military service will receive liberal consideration and that conditions or experiences that may reasonably have existed at the time of discharge will be liberally construed as excusing or mitigating the discharge. Lastly, the guidance states that in some cases, the severity of misconduct may outweigh any mitigation from mental health conditions and substance-seeking behavior and efforts to self-medicate, and symptoms of a mental health condition may warrant consideration. Reddin remarks that despite marijuana use being unlawful in the military, it is now legal in some states and thus may

be viewed in the context of mitigating evidence, as less severe today than it was decades ago. Redden then notes that the Wilkie Memo reinforces the themes of the Kurta Memo, but added that relief is generally more appropriate for non-violent offenses than for violent offenses.

The Kurta Memo stated that requests for relief based in whole or in part on a mental health condition should be considered to be relief based on equitable, injustice or clemency grounds whenever there is insufficient evidence to warrant relief for an error or impropriety. Boards should consider: (1) an applicant's candor; (2)whether the punishment, including collateral consequences, was too harsh; (3) aggravating and mitigating facts related to the record or punishment from which the veteran or service member wants relief; (4) aggravating and mitigating facts related to the record or punishment from which the veteran or service member wants relief; (5) positive or negative post-conviction conduct, including any arrests, criminal charges, or any convictions since the incident at issues; (6) severity of misconduct; (7) length of time since misconduct; (8) acceptance or responsibility; (9) remorse, or atonement for misconduct; (10) the degree to which the requested relief is necessary for the applicant; (11) character and reputation of applicant; (12) critical illness or old age; (13) meritorious service in government or other endeavors; (14) evidence of rehabilitation; (15) availability of other remedies; (16) job history; (17) whether misconduct may have been youthful indiscretion; (18) character

references; (19) letters or recommendation; (20) and victim support for, or opposition to relief, and any reasons provided.[30]

The Navy maintains that Reddin's reliance on 10 U.S.C. § 1553, the FVA, and *Manker* is misplaced because § 1553 governs the Naval Discharge Review Board ("NDRB"), not the BCNR. The Navy remarks that Plaintiff did not submit his request to the NDRB within the prescribed 15 years of his discharge or dismissal, as required by § 1553 and notes that Plaintiff submitted his first application for correction of his record to the BCNR, not the NDRB, in February 2020, more than 15 years after his discharge. Notably, the BCNR is governed by 10 U.S.C. § 1552, not § 1553.

One of Plaintiff's major complaints is that the BCNR failed to include a member who was a clinical psychologist or psychiatrist, or a physician with special training on mental health disorders. The Navy contends that Plaintiff's reliance on the FVA is misplaced because the BCNR, governed by § 1552 does not require that a member of the BCNR be a clinical psychologist or psychiatrist, or a physician with special training on mental health disorders. As noted by the Navy, the FVA became part of the Fiscal Year 2017 National Defense Authorization Act that amended § 1553(d), and as such is not applicable to § 1552. Section 1552 and its governing regulation SECNAVINST 5420.193, allows an advisory opinion from a licensed clinical psychologist. 10 U.S.C. § 1552(g)(1). Accordingly, Plaintiff's arguments here that the BCNR failed to include a member who

---

[30] Reddin also informs the Court of a class action case filed in the District Court of *Manker v. Del Toro*, Civil Action 3:18-cv-372), 329 F.R.D. 110 (D.C. Conn. Nov. 15, 2018) wherein it is alleged that the Navy was not applying the proper standards of liberal consideration issued under these policy guidances and the Fairness for Veterans Act of 2016. A class action settlement was approved on February 15, 2022.

was a clinical psychologist or psychiatrist, or a physician with special training on mental health disorders is without merit.

Next, the Navy contends that Plaintiff's reliance on *Manker*, and the class settlement is misplaced because that settlement applied to the NDRB and not the BCNR.  The Navy notes that these are two separate entities with different governing regulations, and because Plaintiff submitted his claim to the BCNR, he is not entitled to automatic review of the BCNR's decision.  Additionally, as indicated previously, the NDRB has a 15-year statute of limitations for filing applications and Plaintiff's claim would be prescribed under the NDRB.[31]

In the *Manker* settlement, the defendant agreed to settle claims and also agreed to re-adjudicate claims filed and retrain their officers about how to properly apply the above-mentioned memos. Plaintiff remarks that he is one of the veterans that should have his claims re-adjudicated and appears to argue that the Board failed to review his claim using the liberal consideration established in these memos.

*Substantial evidence*

Plaintiff contends that the Board failed to follow its own procedures and thus argues that the matter should be remanded with appropriate instructions citing *Coburn v. McHugh*, 679 F.3d 924 (D.C. Cir. 2012); *Walls v. United States*, 582 F.3d 1358 (Fed. Cir. 2009). Plaintiff suggests that there is undisputed medical evidence that he suffered from a somatic symptom disorder while in service and that his misconduct could be mitigated by this

---

[31] Plaintiff was separated from the Navy in April 2002 and filed his initial application with the BCNR in 2020, well more than 15 years post-separation.

mental health condition.  Plaintiff remarks that Dr. Vallete's report,[32] and the Navy's psychologist's advisory opinion both agreed with regard to Plaintiffs disorder while in the Navy.

Specifically, Plaintiff complains that the Board failed to apply a liberal construction when it determined that there was no convincing evidence of any nexus between any somatic symptom disorder and/or related symptoms and Plaintiff's conduct, i.e. there was insufficient evidence to support the argument that any such mental health conditions mitigated the misconduct that formed the basis of the veteran's discharge. Plaintiff argues that based on the Board's own word "convincing," it failed to apply a liberal consideration standard as required under *Hagel*, *Kurta*, and *Wilkie.*

In response, the Navy argues that the Board's decision to deny Plaintiff's request for an upgrade of his discharge was supported by substantial record evidence and given liberal consideration. Specifically, the Navy contends that it considered Dr. Brett Valette's post-clinical report and the Advisory Opinion. Dr. Valette opined the Plaintiff's in-service back injury resulted in an undiagnosed Somatic Symptom Disorder for which he used marijuana to self-medicate his pain.[33] The Court notes that Plaintiff was never diagnosed with a mental health condition while serving in the Navy and Dr. Valette's report/opinion was made decades after Plainitff's period of service. Valette based his opinion on Plaintiff's claim that he had no history of alcohol or marijuana abuse pre-service, thus, his abuse had to be connected to his back injury while in service.[34]

---

[32] Plaintiff's psychologist hired in July 2021.
[33] AR0187-98.
[34] AR0181, ¶ 14.

Based on this opinion/report, the BCNR requested a mental health Advisory Opinion.[35] The Advisory Opinion, relying on Valette's post-clinical report opined that there was some evidence Plaintiff may have incurred a mental health condition during military service, and there was some evidence that his misconduct could be mitigated by a mental health condition.[36] The Board concluded that

> there was no convincing evidence of any nexus between any somatic symptom disorder, and/or related symptoms and [Plaintiff's] misconduct, and determined that there was insufficient evidence to support the argument that any such mental health conditions mitigated the misconduct that formed the basis of [his] discharge. As a result, the Board concluded that [his] misconduct was not due to mental health-related conditions or symptoms.[37]

The Advisory Opinion issued on November 1, 2021, also concluded that there was no evidence in Plaintiff's limited service record submitted to the BCNR that showed he was evaluated by a mental health provider in service, but further noted that Plaintiff provided post-service evidence that he incurred a mental health condition in service.[38] The Advisory Opinion also noted that Plaintiff contended his misconduct associated with alcohol use was an attempt to medicate his symptoms, but he provided no clinical evidence to support this contention. The opinion concluded that it was possible his alcohol use was a maladaptive coping strategy to alleviate both physical pain and psychological distress.[39] The opinion concluded that based on the evidence available, "there is some evidence

---

[35] AR0172.
[36] AR-0164.
[37] Id.
[38] AR0171.
[39] Id.

[Reddin] may have incurred a mental health condition during military service, and there is some evidence that his misconduct could be mitigated by a mental health condition."[40]

On December 1, 2021, the BCNR denied Plaintiff's request for reconsideration of the denial of a discharge upgrade, finding that the record did not show probable material error or injustice, ultimately concluding the interests of justice did not warrant relief.[41] The BCNR explained that even assuming Plaintiff's misconduct was somehow attributable to any mental health conditions, the BCNR "unequivocally concluded that the severity of [his] misconduct far outweighed any and all mitigation offered by such mental health conditions."[42] The BCNR determined that the record reflected that Plaintiff's misconduct was intentional and willful and demonstrated that he was unfit for further service,  and further noted that the evidence did not demonstrate that Plaintiff's conduct was not willful and persistent, or that he should not be held accountable for his actions.[43] The VA's denial expressly stated that a discharge OTH issued because of willful and persistent misconduct acts as a bar to entitlement to veteran benefit. 38 C.F.R. § 3.12(d)(4). The VA found that Plaintiff's misconduct was not a minor offense and is deemed to be willful and persistent conduct under 38 C.F.R. § 3.12(d)(4) due to the frequency and nature of the offenses during service.[44]

The BCNR noted that it was Plaintiff's responsibility to seek alternative treatment from his medical providers if he was unsatisfied with his back injury treatment rather than

---

[40] *Id.*
[41] AR0163-65.
[42] *Id.*
[43] AR0164-65.
[44] AR0206.

improperly take matters into his own hands by unlawfully using controlled substances.[45] As such, even under the liberal consideration standard, the BCNR found that Plaintiff's serious misconduct clearly merited discharge with an OTH characterization.[46]

The Navy argues that the BCNR's conclusion was supported by the VA's administrative decision in 2019, that denied his compensation benefits.[47] There were multiple incidents of misconduct that were willful and persistent, which were not minor offenses.[48] Additionally, Plaintiff was "actively receiving treatment for [his] back injury on active duty and [was] prescribed strong non-narcotic anti-inflammatory medicine."[49]

After a review of the record and applying a liberal construction and on equitable grounds under *Wilkie*, the BCNR reached the same conclusion, determining that Plaintiff's brief total active service was not otherwise so meritorious as to deserve a discharge upgrade.[50]

Here, the Court has to presume that the BCNR's decision was valid, and thus, it is Plaintiff's burden to show that the Board's decision not to upgrade was invalid because it was arbitrary and capricious. *Pegasus Equine*, 2019 U.S. Dist. LEXIS 52539, at *19.

The Court has considered the whole record and finds that the BCNR applied the appropriate legal standards, and there is substantial evidence in the administrative record to support its findings considering all of the relevant factors. Additionally, as noted in the

---

[45] AR0165.
[46] *Id.*
[47] AR0204-206.
[48] AR0206.
[49] AR0165.
[50] *Id.*

Kurt memo, "[l]iberal consideration does not mandate an upgrade. Relief may be appropriate, however, for minor misconduct commonly associated with mental health conditions . . . and some significant misconduct sufficiently justified or outweighed by the facts and circumstances."[51] The Court concludes that Plaintiff has failed to meet his burden to establish by "cogent and clearly convincing evidence" that the decision of the Board was the result of a material legal error or injustice." *Williams*, 533 at 368 (quoting *Calloway v. Brownlee*, 366 F.Supp.2d 43, 54 (D.D.C. 2005)).

## CONCLUSION

For the reasons explained herein, the Court will deny Plaintiff's Motion for Summary Judgment (Doc. 14) and grant the Navy's Cross-Motion for Summary Judgment (Doc. 17) sustaining the BCNR's decision to deny Plaintiff's request for an upgrade of the OTH discharge characterization.

**THUS DONE AND SIGNED** in Chambers on this 26th day of December, 2024.



**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[51] Doc. 14-2, ¶ 26.1.